# IN THE COURT OF APPEALS OF IOWA

No. 22-0069
Filed December 7, 2022

**MICHELLE DOWNEY and BRANDON J. DOWNEY,**
Plaintiffs-Appellants,

**vs.**

**CARMEN J. MILLER,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan,

Judge.

Michelle and Brandon Downey appeal the district court's grant of judgment

notwithstanding the verdict on their claims against Carmen Miller.  **AFFIRMED.**

Matthew M. Sahag of Dickey, Campbell & Sahag Law Firm, PLC, Des

Moines, for appellants.

David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellee.

Considered by Bower, C.J., and Greer and Badding, JJ.

**BOWER, Chief Judge.**

Brandon and Michelle Downey appeal the district court's entry of judgment notwithstanding the verdict on their claims against Carmen Miller. We conclude the district court did not err and affirm.

**I. Background Facts & Proceedings.**

Miller purchased a Des Moines home in 2001. In 2004, after flooding in the basement, she installed a sump pump and states that resolved the problem.

On September 19, 2018, Miller sold the home to the Downeys. On the seller's disclosure form, Miller checked "Yes" to the question "Has there been known water or other problems?" She wrote "sump pump added—no issues."

According to Michelle, during her first visit to the house, there was no water in the basement, but she "could see the marks on the two-by-fours of the level of water that had been in the home." However, she did not notice any water damage to the basement furniture. Brandon said he did not notice any water stains when he went through the house.

The home inspection summary noted several issues in the basement, but it did not mention water stains, water seepage, or a problem with the sump pump.

Approximately a week and a half after the Downeys moved into the house, the basement flooded during a rainstorm. Michelle described it to the jury as follows:

> But I see water coming in on the north side of the wall in the basement.
> So I called my husband down there. And there was so much water that had come in on the north side that it had traveled to the other side of the basement. We stayed up throughout the night running the Shop-Vac and taking turns sucking up the water. It was almost like somebody turned on the hose up against the north wall,

and the water was just running everywhere. Most of our belongings that were down there were sitting in water.

She further explained the water came in where "the concrete block meets the floor." Brandon described the water entering the basement as "trickling in the corner, and then it would run down the wall behind the washer and dryer." According to Michelle, "there's water coming in every single time it rains," and the basement floods when the rain is heavy. Michelle also testified black mold grows due to moisture behind the laundry area and Miller had painted over it. The Downeys received an estimate of $8154.51 to repair the water issues.

The Downeys filed suit against Miller, alleging she "failed to provide required information in the written disclosure statement" in violation of Iowa Code chapter 558A (2018) and breached the purchase agreement by failing to disclose material defects to the property.[1] Miller moved for summary judgment. Viewing the evidence in the light most favorable to the Downeys, the court denied the motion. The court found a fact question existed whether "Miller had actual knowledge that the sump pump did not fully fix the flooding issue" in light of the Downeys' experience and the occurrence of heavy rainfall events between the sump pump installation and their purchase of the house.

At the trial's conclusion, Miller's attorney moved for a directed verdict, asserting there was no evidence Miller knew the sump pump did not work as intended or that the Downeys would get water in the basement. The district court denied the motion.

---

[1] The Downeys also filed suit against Miller's real estate broker and company. Those claims were resolved via summary judgment.

The jury found for the Downeys on both allegations and awarded them $8154.51, consistent with the repair estimate. Miller filed a motion for judgment notwithstanding the verdict. The district court found there was insufficient evidence to support a legitimate inference Miller had actual knowledge of flooding or water issues in the basement before selling it to the Downeys. The court reasoned, "To reach the conclusion that Miller had actual knowledge based upon the June 25, 2018 rain event required the jury to speculate." The court stated it should not have submitted the question to the jury and granted Miller's motion for judgment notwithstanding the verdict.

The Downeys appeal.

## II. Standard of Review.

"We review the district court's grant of a motion for judgment notwithstanding the verdict for correction of errors at law. *Doe v. Cent. Iowa Health Sys.*, 766 N.W.2d 787, 790 (Iowa 2009). "A motion for judgment notwithstanding the verdict should be granted if there is not substantial evidence to support the elements of the plaintiff's claim." *Thornton v. Am. Interstate Ins. Co.*, 940 N.W.2d 1, 8 (Iowa 2020). We view the evidence in the light most favorable to the party against whom the motion is intended, the nonmoving party. *Doe*, 766 N.W.2d at 790.

## III. Analysis.

The Downeys made two claims: breach of contract and a violation of real estate disclosures required under Iowa Code chapter 558A. As to the breach of contract, the jury was instructed: "Carmen Miller breached the terms of the purchase agreement by . . . . [n]ot disclosing that the addition of a sump pump to

the basement did not fix the water problems in the basement of the home." On the chapter 558A claim, the jury was instructed: "Your verdict must be for the Downeys and against Carmen Miller on the Downeys' Iowa Code chapter 558A claim if one or more of the following elements have been proven: . . . Carmen Miller had actual knowledge that the addition of a sump pump to the basement did not fix the water problems in the basement of the home."

The district court granted judgment notwithstanding the verdict based on the actual-knowledge element of each claim, finding there was not substantial evidence to support a legitimate inference Miller knew of the issue. The Downeys assert circumstantial evidence allowed the jury as factfinder to draw a legitimate inference Miller had actual knowledge of water or flooding issues at the time she sold the home. Miller asserts the jury's verdict was based on speculation.

No direct evidence presented supports a finding Miller had actual knowledge the sump pump did not fix the water problem. So, we consider circumstantial evidence.

> [C]ircumstantial evidence is sufficient to establish a fact only where the evidence has sufficient force to allow a factfinder to draw a legitimate inference from the evidence presented. A legitimate inference drawn from circumstantial evidence must be "rational, reasonable, and otherwise permissible under the governing substantive law." An inference is not legitimate if it is based upon suspicion, speculation, conjecture, surmise, or fallacious reasoning. "Under our law it is just as pernicious to submit a case to a jury and permit the jury to speculate with the rights of citizens when no question for the jury is involved, as it is to deny to a citizen his trial by jury when he has the right."

*Godfrey v. State*, 962 N.W.2d 84, 102–03 (Iowa 2021) (internal citations omitted). "In order to prove actual knowledge through circumstantial evidence . . . the evidence must be sufficient to draw a conclusion that a reasonable person simply

could not have known otherwise. Actual knowledge thus can be established by circumstantial evidence only in *rare* cases." *Caruso v. Apts. Downtown, Inc.*, 880 N.W.2d 465, 474 (Iowa 2016) (emphasis added) (internal citations omitted). "It is the general rule in this state that in matters of proof, a litigant is not justified in inferring a fact as proven from mere possibility of existence of facts." *Goodman v. Gonse*, 76 N.W.2d 873, 877 (Iowa 1956).

Here, the evidence presented included Miller's testimony she did not have water problems after the installation of a sump pump in 2005, and the basement held furniture with rugs on the floor when she was owner of the house. The photos from the house listing did not show any evidence of water on the walls, floors, or furniture in the basement. The house inspection summary did not note evidence of water seeping in or the sump pump's functionality. Michelle testified she could see evidence of past water in the basement; her husband saw no evidence of water damage. The only evidence to support the jury's inference of actual knowledge was the presence of mold behind the washer and dryer along the north wall, the occurrence of a heavy rainfall after the Downeys moved in, and the fact water entered the basement despite the sump pump.

The district court determined the circumstantial evidence was not sufficient for the jury to infer Miller had actual knowledge of the water problem in the basement. We agree and affirm.

**AFFIRMED.**