**MASTLAND, INC., Appellant,**

v.

**EVANS FURNITURE, INC., Jack Evans, and Angela Evans, Appellees.**

No. 92–298.

Supreme Court of Iowa.

April 21, 1993.

David A. Millage, Bettendorf, for appellant.

William J. Bush of Carlin, Hellstrom & Bittner, Davenport, for appellees.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO, and ANDREASEN, JJ.

LAVORATO, Justice.

This lawsuit arises out of a fire caused by a child who was playing with a cigarette lighter in his crib. The landlord sued the tenants and the child's mother for damages to its property caused by the fire. The landlord relied on two theories for recovery: negligence and breach of lease. In a bench trial, the district court found against the landlord on both theories. We affirm.

I. *Backgrounds Facts and Proceedings.*

Jack Evans signed a "Dwelling Unit Rental Agreement" on a single family residence in his name and apparently on behalf of Evans Furniture, Inc. Mastland, Inc., a real estate investment firm, was the lessor. Jack allowed his daughter Angela and her two small children—Nick and Mandy—to live with him. At the time of the incident that precipitated this lawsuit, Nick was about two years and nine months old.

About six months after the lease was signed, the home and most personal belongings were destroyed by fire. Jack was not home at the time. Angela had put Nick down for a nap. She heard him crying, investigated, and found him and his room on fire. An investigation of the fire's origin substantiated that Nick caused the fire by playing with a cigarette lighter in his crib. Nick was severely burned in the incident.

Mastland later filed suit, naming Evans Furniture, Jack Evans, and Angela Evans as defendants. Mastland amended its petition several times. The last amendment contained four counts: (1) a claim imputing Nick's alleged negligence to Jack and Evans Furniture, (2) a claim alleging negligent supervision by Angela and imputing this alleged negligence to Jack and Evans Furniture, (3) a claim for application of res ipsa loquitur, and (4) a claim for breach of lease. Mastland requested damages for (1) destruction of the premises, (2) destruction of personal property, (3) loss of rent, and

(4) funds expended to secure the destroyed premises.

The defendants answered, asserting several affirmative defenses. Later, Jack and Evans Furniture moved for summary judgment, and their motion was denied.

The case was then tried to the district court. Following trial, the district court dismissed Mastland's petition. In its findings the court stated that it could not find by a preponderance of the evidence that any negligence of Jack Evans or Angela Evans caused the fire.

Mastland then filed a motion to enlarge the court's ruling under Iowa Rule of Civil Procedure 179(b). In deciding the motion, the court found that (1) Jack and Evans Furniture did not breach the lease by not delivering the premises in an unchanged condition, (2) Nick's negligence was not proved, and (3) res ipsa loquitur was not applicable in this case.

Mastland then appealed to us raising several issues that we now proceed to consider.

## II. *Scope of Review.*

◼ Our review is on error. Iowa R.App.P.4. The district court's findings of fact are akin to a jury verdict and are binding on us if supported by substantial evidence. *Bluffs Development Co. v. Board of Adjustment*, 499 N.W.2d 12, 14 (Iowa 1993). Evidence is substantial if a reasonable mind could accept it as adequate to reach the same findings. *Id.*

## III. *The Negligence Claims Against Jack and Evans Furniture.*

◼ A. *Imputation of the child's alleged negligence.* The final amended petition alleged that the negligence of the child in starting the fire was attributable to Jack and Evans Furniture. Mastland's Rule 179(b) motion asked the court to enlarge its findings and decide this issue. The district court responded this way:

> The court specifically finds that the negligence of Nick Evans was not proved in this case. A two-year-old child "playing with a lighter" is not negligent.

The court, we think, was saying that a child of such tender years does not have the capacity to be negligent. For reasons that follow we agree.

In *Peterson v. Taylor,* 316 N.W.2d 869 (Iowa 1982), this court articulated the standard of care applicable to children in negligence and contributory negligence cases. The court adopted the standard set forth in the Restatement (Second) of Torts section 283A:

> If the actor is a child, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable person of like age, intelligence, and experience under like circumstances.

*Peterson,* 316 N.W.2d at 873 (quoting Restatement (Second) of Torts § 283A (1965)). Any presumptions regarding the capacity of children were apparently swept away by *Peterson. Id.* This court said that "the question of a particular child's capacity is an issue of fact to be determined on the basis of evidence of the child's age, intelligence and experience." *Id.* In applying the above quoted Restatement standard of care for children, this court adopted the following two-step approach:

> [T]he jury's first inquiry is a subjective one: What was the capacity of this particular child—given what the evidence shows about his age, intelligence and experience—to perceive and avoid the particular risk involved in this case? Once this has been determined, the focus becomes objective: How would a reasonable child of like capacity have acted under similar circumstances? The particular child in question can be found negligent only if his actions fall short of what may reasonably be expected of children of similar capacity.

*Id.*

In *Peterson,* a seven-year-old boy was severely burned when he was playing with matches and gasoline. The evidence showed that the child knew he could be burned if he played with this combination of dangerous items. That was enough evidence to allow a factual determination on the question of the child's contributory negligence under this two-step approach.

Here we have a child of tender years— two years and nine months. Should the

rule be different in such a case? This court in *Peterson* referred to that scenario and suggested the following approach:

> Under this approach [the question of a child's capacity for negligence is a question of fact], a particular *child's incapacity for negligence may be determined by the court as a matter of law only if the child is so young* or the evidence of incapacity so overwhelming *that reasonable minds could not differ on that issue.*

*Id.* (emphasis added).

The Restatement correctly points out that

> [a] child may be so young as to be manifestly and utterly incapable of exercising any of those qualities of attention, perception, knowledge, experience, intelligence, and judgment which are necessary to enable him to perceive a risk and to realize its unreasonable character.... *Undoubtedly there is a minimum age, probably somewhere in the vicinity of four years,* below *which negligence can never be found....*

Restatement (Second) of Torts § 283A cmt. b (1965) (emphasis added). We think at least as to three years of age and under, a child is incapable of negligence. Because the child here was of such tender years, he was not capable of negligence. For that reason there was no negligence to impute to Jack and Evans Furniture.

■ B. *Imputation of Angela's alleged negligence.* Mastland also charges that Angela was negligent in her supervision of Nick and that this negligence should be imputed to Jack and Evans Furniture.

As to parents' duty to control the conduct of their child, the rule is that parents are

> under a duty to exercise reasonable care so to control [their] minor child as to prevent [the child] from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent[s]
>
> (a) know[ ] or [have] reason to know that [they have] the ability to control [their] child, and

> (b) know[ ] or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 316 (1965); *Smith v. Shaffer,* 395 N.W.2d 853, 856 (Iowa 1986) (citing with approval Restatement (Second) of Torts section 316 on issue of parents' failure to supervise children). Comments b and c to section 316 of the Restatement are relevant here and they pertinently provide:

> b. The duty of ... parent[s] is only to exercise such ability to control [their] child as [they] in fact [have] at the time when [they have] the opportunity to exercise it and know[ ] the necessity of so doing....
>
> c. In order that the parent[s] may be liable under the rule stated in this section, it is not necessary that the actions of the child which [the parents] fail[ ] to prevent or control are such as to make the child ... subject to liability. The child may be so young as to be incapable of negligence, but this does not absolve the parent[s] from the performance of [their] duty to exercise reasonable care to control the child's conduct. Indeed, the very youth of the child is likely to give the parent[s] more effective ability to control [the child's] actions and to make it more often necessary to exercise it.

Jack and his fiancee testified that Angela was an "overly protective" mother. The evidence revealed that Jack, his fiancee, and Angela smoked and used cigarette lighters. All three adults testified that the cigarettes and cigarette lighters were never left in the open or lying about in the Evans' home precisely because Angela's children were present. They also testified that they always carried their cigarettes and cigarette lighters on their person. The three testified they never saw Nick play with a cigarette lighter.

There was no evidence that Nick at any time had easy access to or was allowed to play with lighters while in his mother's care. Neither was there any evidence as to how the lighter came to be in Nick's possession. Angela testified that immediately

before Nick was put down for his nap, he was fussy and reached for her. As she picked him up, she saw nothing in his hands. He had no place to hide a lighter because he was wearing a tank top and shorts with no pockets. When Angela laid Nick in his crib, she saw no lighter or matches there.

The district court correctly concluded that the foregoing evidence was not sufficient to establish that Angela was negligent in her supervision of Nick. So there was no negligence on the part of Angela to impute to Jack and Evans Furniture.

## IV. *Res Ipsa Loquitur.*

■ In its ruling addressing Mastland's Rule 179(b) motion, the district court held that res ipsa loquitur was not applicable in this case. Res ipsa loquitur is a rule of evidence. *Town of Reasnor v. Pyland Constr. Co.*, 229 N.W.2d 269, 272 (Iowa 1975). Res ipsa loquitur applies when (1) the injury is caused by an instrumentality under the exclusive control of the defendant, and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used. If there is substantial evidence to support both elements, the happening of the injury permits—but does not compel—an inference that the defendant was negligent. *Tappe v. Iowa Methodist Medical Ctr.*, 477 N.W.2d 396, 399 (Iowa 1991).

■ Common experience teaches us that two and three-year-olds are inquisitive and mischievous, giving rise to the old adage, "the terrible two's." The point is that such children may get into mischief despite a parent's best efforts and care to prevent it. This tragic incident is a good example of our point. All the evidence points to reasonable care on the part of the parent yet the child was injured and property was damaged. For this reason we think substantial evidence was lacking as to the second foundational fact for the application of res ipsa loquitur: the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used. The mere happening of the incident here, therefore, did not give rise to an inference of negligence. The district court correctly refused to apply res ipsa loquitur.

## V. *Breach of Lease.*

■ Mastland asserts that pursuant to Iowa Code section 562A.12(3)(b) (1987), a tenant must return leased premises to the landlord in the same condition as at the commencement of the lease, ordinary wear and tear excepted. Mastland points out that here the premises were not so returned because the premises were damaged beyond ordinary wear and tear. Because the lease is silent on who bears the loss in these circumstances, Mastland contends the tenants do.

Contrary to Mastland's contention, the lease is specific on what responsibility the tenants had. The lease pertinently provides that a "[t]enant shall not deliberately or negligently destroy, deface, damage, impair or remove a part of the premises, or knowingly permit a person to do so." This lease language tracks verbatim the language in Iowa Code section 562A.17(6) found in Article III—Tenant Obligations—of the Uniform Residential Landlord and Tenant Law [hereinafter Uniform Law]. This lease language also implies that tenants are not insurers under the lease. They are responsible only for losses resulting from the tenant's deliberate or negligent acts or where the tenants knowingly permit such acts.

Despite this lease language and Iowa Code section 562A.17(6), Mastland maintains that Iowa Code section 562A.12(3)(b) and the common law required Jack and Evans Furniture to return the premises in the same condition as at the commencement of the lease, ordinary wear and tear excepted. Because the lease was silent on who bears the loss for fire damage, Mastland argues the law assigns the loss to tenants. For two reasons, we disagree.

■ First, we think Mastland reads too much into section 562A.12(3)(b). This section, found in Article III—Landlord Obligations—of the Uniform Law pertinently provides:

A landlord shall ... return the rental deposit to the tenant or furnish to the tenant a written statement showing the specific reason for withholding of the rental deposit.... If the rental deposit

... is withheld for the restoration of the dwelling unit, the statement shall specify the nature of the damages. The landlord may withhold ... the rental deposit ... for the following reasons:

. . . .

(b) To restore the dwelling unit to its condition at the commencement of the tenancy, ordinary wear and tear excepted.

We think this provision must be read in light of section 562A.17(6). In other words, the landlord may keep the rental deposit only if the damages beyond ordinary wear and tear result from the deliberate or negligent acts of the tenant, or the tenant knowingly permits such acts.

Second, contrary to Mastland's contention, the common law rule provides that

[g]enerally, the liability of a tenant for the destruction of a building by fire depends on negligence. The tenant is only required, in the absence of stipulations in the lease, to use reasonable diligence to protect buildings on the demised premises from destruction by fire, and is not liable for accidental damages or destruction by fire; he is liable only if the buildings are destroyed through his wrongful act or negligence.

49 Am.Jur.2d *Landlord and Tenant* § 934, at 910 (1970). The rule is the same where the ordinary wear and tear language is used in the lease. *See, e.g., Seevers v. Gabel,* 94 Iowa 75, 81–82, 62 N.W. 669, 671 (1895) (A provision in a lease that leased property should be returned "as it now is, usual wear excepted" does not make lessee liable in damages where the property is, without his fault, destroyed by fire.)

Here the district court ruled that it could not find by a preponderance of the evidence that any negligence of Jack or Angela caused the fire. In its ruling in response to Mastland's Rule 179(b) motion, the court also ruled that the child was not negligent. Earlier we concluded there was substantial evidence to support these findings, a conclusion that disposes of Mastland's contention that Jack and Evans Furniture breached the lease.

VI. *Disposition.*

In sum, we agree with the district court that Mastland failed to prove that (1) either the child or his mother were negligent and (2) their negligence caused the fire. Because of this failure of proof, there remained no liability to impute to Jack and Evans Furniture.

We likewise agree that res ipsa loquitur was not applicable in this case.

Finally, we agree that Jack and Evans Furniture did not breach the lease when they failed to return the premises in the same condition as they were in when the lease began. Their liability for any damages caused by the fire had to be predicated, under the terms of the lease and existing law, on their negligence or the negligence of others in causing the fire. Such negligence was not proven.

Finding no error, we affirm.

**AFFIRMED.**